# EXHIBIT "A"



**Certified Forensic Loan Auditors**

# *CERTIFIED FORENSIC LOAN AUDITORS, LLC*

13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT[TM]*

**"This is a Securitization Analysis Report and not a Forensic Audit Report"**

## *Prepared for:*

## *ELLIOTT R. RODRIGUEZ*

### *For Property Address*

### *4216 Wheeler Street*
### *Riverside, CA 92503*

## *Prepared on:*

## *May 20, 2014*

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "*...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court.*"

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# SECTION 1:   TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| ELLIOTT R. RODRIGUEZ | |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 4216 Wheeler Street, Riverside, CA 92503 | 4216 Wheeler Street, Riverside, CA 92503 |

## TRANSACTION PARTICIPANTS

| AMOUNT | MORTGAGE SERVICER | MORTGAGE NOMINEE/BENEFICIARY |
|---|---|---|
| $245,000.00 | (Current Servicer)<br><br>Wells Fargo Bank, N.A. dba America's Servicing Company<br>Minneapolis, MN | Mortgage Electronic Registration Systems, Inc. ("MERS")<br>PO Box 2026<br>Flint, MI 48501-2026<br>(888)679-MERS |
| **ORIGINAL MORTGAGE LENDER** | **LOAN TYPE** | **TITLE COMPANY** |
| PROVIDENT SAVINGS BANK, F.S.B.<br>3756 Central Ave.,<br>Riverside, CA 92506 | Conventional 30 Year Adjustable Rate Mortgage | TBD |

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011
-All Rights Reserved-



**Certified Forensic Loan Auditors**

# SECTION 2:    SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| ORIGINATOR/LENDER | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| **PROVIDENT SAVINGS BANK, F.S.B., et. al. [1] or purchased by them from correspondent lenders** | **DLJ MORTGAGE CAPITAL, INC.** | **CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.** |
| ISSUING ENTITY | TRUSTEE | MASTER SERVICER/ SERVICER |
| **ADJUSTABLE RATE MORTGAGE TRUST 2006-1** | **U.S. BANK, N.A.** | **WELLS FARGO BANK, N.A.** |
| CUSTODIAN | CUT – OFF DATE | CLOSING DATE |
| **LASALLE BANK, N.A.** | **February 1, 2006** | **On or about February 28, 2006** |

Page | 3

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

```
<DOCUMENT>
<TYPE>424B5
<SEQUENCE>1
<FILENAME>e23488-424b5.txt
<DESCRIPTION>PROSPECTUS SUPPLEMENT
<TEXT>
```

# Prospectus Supplement

### (To Prospectus Dated December 22, 2005)

### DLJ MORTGAGE CAPITAL, INC.
*Sponsor and Seller*

### CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.
*Depositor*

### ADJUSTABLE RATE MORTGAGE TRUST 2006-1
*Issuing Entity*

### ADJUSTABLE RATE MORTGAGE-BACKED PASS THROUGH CERTIFICATES,
### SERIES 2006-1

### $1,333,476,100
(Approximate)

### Credit Suisse
*Underwriter*

### February 27, 2006

http://www.sec.gov/Archives/edgar/data/1354935/000089109206000528/e23488-424b5.txt

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

# SUMMARY

The following summary highlights selected information from this prospectus supplement. It does not contain all of the information that you should consider in making your investment decision. To understand the terms of the offered certificates, read this entire prospectus supplement and the entire accompanying prospectus carefully.

Issuing Entity .............   Adjustable Rate Mortgage Trust 2006-1

Title of Series ...........   Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2006-1.

Sponsor and Seller ........   DLJ Mortgage Capital, Inc., referred to in this prospectus supplement as DLJ Mortgage Capital.

Originators ...............   As of the cut-off date, Countrywide Home Loans, Inc. originated or acquired an aggregate of approximately 48.63% of the mortgage loans in loan groups 1-5. Own-It Mortgage Solutions, Inc., Credit Suisse Financial Corporation and Countrywide Home Loans, Inc. originated or acquired approximately 14.04%, 13.95% and 10.62%, respectively, of the group 6 mortgage loans. No other originator originated or acquired more than 10% of the mortgage loans in loan groups 1-5 or in loan group 6 (by cut-off date principal balance).

Depositor .................   Credit Suisse First Boston Mortgage Securities Corp.

Servicers .................   Wells Fargo Bank, N.A., referred to in this prospectus supplement as Wells Fargo Bank, Select Portfolio Servicing, Inc., referred to in this prospectus supplement as SPS, and Countrywide Home Loans Servicing LP, referred to in this prospectus supplement as Countrywide Servicing. Countrywide Servicing is servicing certain mortgage loans pursuant to a separate servicing agreement, is not a party to the pooling and servicing agreement and is referred to in this prospectus supplement as a designated servicer. Wells Fargo Bank, SPS and Countrywide Servicing are collectively referred to in this prospectus supplement as the servicers. No other servicer is servicing more than 10% of the mortgage loans (by aggregate cut-off date principal balance) in any loan group.

Special Servicer ..........   SPS.

Master Servicer ...........   Wells Fargo Bank, also referred to in this prospectus supplement as the master servicer. The master servicer will oversee and enforce the servicing of the mortgage loans by the servicers.

Back-up Servicer ..........   Wells Fargo Bank will act as back-up servicer to the obligations of SPS, except with respect to any obligations related to special servicing.

Page | 5

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

| | |
|---|---|
| Trustee ..................... | U.S. Bank National Association. |
| Trust Administrator ........ | Wells Fargo Bank. |
| Custodian .................. | LaSalle Bank National Association |
| Cap and Swap<br>    Counterparty ............ | Credit Suisse International, referred to in this prospectus supplement as the cap and swap counterparty. |
| Mortgage Pool .............. | Initially, 3,139 adjustable-rate mortgage loans with an aggregate principal balance of approximately $1,349,525,720.73 as of the Cut-off Date, secured by first liens on one- to four-family residential properties. |
| Cut-off Date .............. | February 1, 2006. |
| Closing Date .............. | On or about February 28, 2006. |
| Distribution Dates ........ | On the 25th day of each month, or if the 25th day is not a business day, on the succeeding business day, beginning in March 2006. |
| Scheduled Final<br>    Distribution Date ....... | The distribution date in March 2036. The actual final distribution date could be substantially earlier. |
| Form of Offered<br>    Certificates ............ | The offered certificates, other than the Class AR and Class AR-L Certificates, will be book-entry certificates. The Class AR and Class AR-L Certificates will be physical certificates.<br><br>See "Description of the Certificates--Book-Entry Registration" in this prospectus supplement. |
| Minimum Denominations ...... | The offered certificates, other than the Class AR and Class AR-L Certificates, will be issued in minimum denominations (by principal balance) of $25,000 and integral multiples of $1 in excess thereof. The Class AR and Class AR-L Certificates will be issued in minimum percentage interests of 20%. |

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# POOLING AND SERVICING AGREEMENT

## Assignment of Mortgage Loans

Pursuant to the pooling and servicing agreement, on the closing date, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each mortgage loan, including all principal and interest received on or with respect to such mortgage loans, exclusive of principal and interest due on or prior to the Cut-off Date.

In connection with such transfer and assignment, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, a mortgage file for each mortgage loan which will consist of, among other things, the original promissory note, or mortgage note, and any modification or amendment thereto endorsed in blank without recourse (except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost), the original instrument creating a first lien on the related mortgaged property, or the mortgage, with evidence of recording indicated thereon, an assignment in recordable form of the mortgage, the title policy or a commitment to issue the title policy with respect to the related mortgaged property and, if applicable, all recorded intervening assignments of the mortgage and any riders or modifications to such mortgage note and mortgage except for any such document not returned from the public recording office, which will be delivered to the trustee or its custodian as soon as the same is available to the depositor. Assignments of the mortgage loans to the trustee or its nominee will be recorded in the appropriate public office for real property records, except in states where, in the opinion of counsel, such recording is not required to protect the trustee's interest in the mortgage loan against the claim of any subsequent transferee or any successor to or creditor of the depositor or the seller.

The trustee or its custodian will review each mortgage file within 90 days of the closing date, or promptly after receipt by the trustee or its custodian of any document permitted to be delivered after such date; and if any document in a mortgage file is found to be missing or defective in a material respect and the seller does not cure such defect within 90 days of notice thereof from the trustee or its custodian or within such longer period not to exceed 720 days after such date in the case of missing documents not returned from the public recording office, the seller will be obligated to repurchase the related mortgage loan from the trust. Rather than repurchase the mortgage loan as provided above, the seller may remove such mortgage loan (a deleted mortgage loan) from the trust and substitute in its place another mortgage loan (a replacement mortgage loan). However, any such substitution occurring more than 90 days after the closing date may not be made unless an opinion of counsel is provided to the effect that such substitution will not disqualify any REMIC or result in a prohibited transaction tax under the Code; provided, however, that such opinion will not be required if (1) the substitution occurs within two years of the closing date and (2) the substitution occurs with respect to mortgage loans that are "defective" under the Code and the seller delivers to the trustee and the trust administrator an officer's certificate to that effect. Any replacement mortgage loan generally will, or, if more than one replacement mortgage loan is being substituted for a mortgage loan, generally will have in the aggregate or on a weighted average basis, on the date of substitution, among other characteristics set forth in the pooling and servicing agreement:

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011

**Certified Forensic Loan Auditors**

o     have a principal balance, after deduction of all scheduled payments due in the month of substitution, not in excess of, and not more than 10% less than, the Stated Principal Balance of the deleted mortgage loan (the amount of any shortfall to be deposited by the seller and held for distribution to the certificateholders on the related distribution date);

o     have a current mortgage rate not lower than, and not more than 1% per annum higher than, that of the deleted mortgage loan, have a maximum mortgage rate and minimum mortgage rate not less than the respective rate for the deleted mortgage loan, have the same index as the deleted mortgage loan and a margin equal to or greater than the deleted mortgage loan;

o     have an LTV ratio not higher than that of the deleted mortgage loan;

o     have a remaining term to maturity not more than one year greater than or less than that of the deleted mortgage loan provided that the remaining term to maturity of any such mortgage loan shall be no greater than the last maturing mortgage loan in the trust immediately prior to any substitution; and

o     comply with all of the representations and warranties set forth in the pooling and servicing agreement as of the date of substitution.

This cure, repurchase or substitution obligation constitutes the sole remedy available to certificateholders or the trustee for omission of, or a material defect in, a mortgage loan document.

Notwithstanding the foregoing, in lieu of providing the duly executed assignment of the mortgage to the trustee and the original recorded assignment or assignments of the mortgage together with all interim recorded assignments of that mortgage, the depositor may at its discretion provide evidence that the related mortgage is held through the MERS(R) System. In addition, the mortgages for some of the mortgage loans in the trust that are not already held through the MERS(R) System may, at the discretion of a servicer, in the future be held through the MERS(R) System. For any mortgage held through the MERS(R) System, the mortgage is recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, as nominee for the owner of the mortgage loans and subsequent assignments of the mortgage were, or in the future may be, at the discretion of a servicer, registered electronically through the MERS(R) System. For each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan.

Representations and Warranties Regarding the Mortgage Loans

Under the pooling and servicing agreement, the trustee will receive representations and warranties made by DLJ Mortgage Capital. The mortgage loan representations and warranties will be made by DLJ Mortgage Capital as of the closing date or subsequent transfer date (or such earlier date, as specified in the subsequent transfer documents), as applicable. These representations and warranties include the following:

o     each mortgage note and related mortgage is a legal and binding obligation of the maker thereof, enforceable in all respects in accordance with its terms subject to bankruptcy and other laws affecting the rights of creditors and general equitable principles;

Page | 8

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011

**Certified Forensic Loan Auditors**

o    each mortgage loan at the time it was made complied in all material respects with applicable federal, state or local law, including, without limitation, predatory and abusive lending laws;

o    none of the mortgage loans are classified as a "high cost home," "covered," "high-cost," "high-risk home," or "predatory" loan under applicable state, federal or local law;

o    the information set forth in the mortgage loan schedule is complete, true and correct in all material respects as of the cut-off date;

o    no mortgaged property is subject to any material damage by waste, fire, earthquake, windstorm, flood or other casualty as of the closing date, and at origination of each mortgage loan there was, and there currently is, no proceeding pending for the total or partial condemnation of the related mortgaged property;

o    each mortgage loan complies with all the terms, conditions and requirements of the originator's underwriting standards in effect at the time of origination;

o    each mortgage loan had a CLTV ratio at origination of 100.00% or less; and

o    each mortgage loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Internal Revenue Code.

In the event of a breach of any representation or warranty relating to a mortgage loan that materially and adversely affects the interests of the certificateholders in that mortgage loan, DLJ Mortgage Capital will be obligated to do one of the following:

o    cure that breach,

o    repurchase that mortgage loan at an amount equal to the sum of the unpaid principal balance of the mortgage loan on the date of repurchase, and accrued interest on that mortgage loan at the applicable mortgage rate from the date through which interest was last paid by the mortgagor to the date of repurchase, or

o    substitute a replacement mortgage loan for that mortgage loan.

However, this substitution is permitted only within two years of the closing date and may not be made unless an opinion of counsel is provided to the effect that the substitution will not disqualify any REMIC, or result in a prohibited transaction under the Internal Revenue Code. The depositor will make no representations or warranties for the mortgage loans and will have no obligation to repurchase or substitute mortgage loans with deficient documentation or that are otherwise defective. The sponsor is selling the mortgage loans without recourse and will have no obligations for the mortgage loans in its capacity as seller other than the cure, repurchase or substitution obligations described above. The obligations of each servicer are limited to its contractual servicing obligations under the pooling and servicing agreement.

http://www.sec.gov/Archives/edgar/data/1354935/000089109206000528/e23488-424b5.txt
S-94 to S-96 <PAGE>

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

## Assignment of Mortgage Loans

Pursuant to the pooling and servicing agreement, on the closing date the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the securityholders all right, title and interest of the depositor in and to each mortgage loan and other assets included in the trust fund, including all principal and interest received on or with respect to such mortgage loans, exclusive of principal and interest due on or prior to the Cut-off Date.

In connection with such transfer and assignment, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, a mortgage file for each mortgage loan which will consist of, among other things, the original promissory note, or mortgage note, and any modification or amendment thereto endorsed in blank without recourse (except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost), the original instrument creating a first or second, as applicable, lien on the related mortgaged property, or the mortgage, with evidence of recording indicated thereon, an assignment in recordable form of the mortgage, the title policy, if applicable, or a commitment to issue the title policy with respect to the related mortgaged property and, if applicable, all recorded intervening assignments of the mortgage and any riders or modifications to such mortgage note and mortgage except for any such document not returned from the public recording office, which will be delivered to the trustee or its custodian as soon as the same is available to the depositor. Assignments of the mortgage loans to the trustee or its nominee will be recorded in the appropriate public office for real property records, except in states where, in the opinion of counsel, such recording is not required to protect the trustee's interest in the mortgage loan against the claim of any subsequent transferee or any successor to or creditor of the depositor or the seller. In addition, with respect to any commercial mortgage loans, multifamily mortgage loans and Mixed-Use Mortgage Loans, the depositor will deliver or cause to be delivered to the trustee, or the custodian hereinafter referred to, the assignment of leases, rents and profits, if separate from the mortgage, and an executed re-assignment of assignment of leases, rents and profits.

The depositor will cause to be delivered to the trustee, its agent, or a custodian, with respect to any Cooperative Loan, the related original security agreement, the proprietary lease or occupancy agreement, the recognition agreement, an executed financing statement and the relevant stock certificate and related blank stock powers. The servicer will file in the appropriate office a financing statement evidencing the trustee's security interest in each Cooperative Loan.

The trustee or its custodian will review each mortgage file within 90 days of the closing date, or promptly after receipt by the trustee or its custodian of any document permitted to be delivered after such date; and if any document in a mortgage file is found to be missing or defective in a material respect and the seller does not cure such defect within 90 days of notice thereof from the trustee or its custodian or within such longer period not to exceed 720 days after such date in the case of missing documents not returned from the public recording office, the seller will be obligated to repurchase the related mortgage loan from the trust. Rather than repurchase the mortgage loan as provided above, the seller may remove such mortgage loan (a deleted mortgage loan) from the trust and substitute in its place another mortgage loan (a replacement mortgage loan). However, any such substitution occurring more than 90 days after the closing date may not be made unless an opinion of counsel is

Page | 10

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

provided to the effect that such substitution will not disqualify any REMIC or result in a prohibited transaction tax under the Code; provided, however, that such opinion will not be required if (1) the substitution occurs within two years of the closing date and (2) the substitution occurs with respect to mortgage loans that are "defective" under the Code and the seller delivers to the trustee and the trust administrator an officer's security to that effect. Any replacement mortgage loan generally will, or, if more than one replacement mortgage loan is being substituted for a mortgage loan, generally will have in the aggregate or on a weighted average basis, on the date of substitution, among other characteristics set forth in the pooling and servicing agreement:

- o    have a principal balance, after deduction of all scheduled payments due in the month of substitution, not in excess of, and not more than 10% less than, the Stated Principal Balance of the deleted mortgage loan (the amount of any shortfall to be deposited by the seller and held for distribution to the securityholders on the related distribution date);

- o    have a current mortgage rate not lower than, and not more than 1% per annum higher than, that of the deleted mortgage loan, have a maximum mortgage rate and minimum mortgage rate not less than the respective rate for the deleted mortgage loan, have the same index as the deleted mortgage loan and a margin equal to or greater than the deleted mortgage loan;

- o    have an LTV, or if applicable, a CLTV, ratio not higher than that of the deleted mortgage loan;

- o    have a remaining term to maturity not more than one year greater than or less than that of the deleted mortgage loan provided that the remaining term to maturity of any such mortgage loan shall be no greater than the last maturing mortgage loan in the trust immediately prior to any substitution; and

- o    comply with all of the representations and warranties set forth in the pooling and servicing agreement as of the date of substitution.

    This cure, repurchase or substitution obligation constitutes the sole remedy available to securityholders or the trustee for omission of, or a material defect in, a mortgage loan document.

    Notwithstanding the foregoing, in lieu of providing the duly executed assignment of the mortgage to the trustee and the original recorded assignment or assignments of the mortgage together with all interim recorded assignments of that mortgage, the depositor may at its discretion provide evidence that the related mortgage is held through the MERS(R) System. In addition, the mortgages for some of the mortgage loans in the trust that are not already held through the MERS(R) System may, at the discretion of a servicer, in the future be held through the MERS(R) System. For any mortgage held through the MERS(R) System, the mortgage is recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, as nominee for the owner of the mortgage loans and subsequent assignments of the mortgage were, or in the future may be, at the discretion of a servicer, registered electronically through the MERS(R) System. For each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan.

    If stated in the applicable prospectus supplement, with respect to the mortgage loans in a mortgage pool, the depositor or the seller will make

Page | 11

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

representations and warranties as to the types and geographical distribution of
the related mortgage loans and as to the accuracy in all material respects of
certain information furnished to the trustee in respect of each mortgage loan.
In addition, if stated in the related prospectus supplement, the depositor will
represent and warrant that, as of the Cut-off Date for the related series of
certificates, no mortgage loan is more than 30 days delinquent as to payment of
principal and interest. Upon a breach of any representation or warranty by the
depositor or the seller that materially and adversely affects the interest of
the certificateholders, the depositor or the seller, as applicable, will be
obligated either to cure the breach in all material respects or to purchase the
mortgage loan at the purchase price set forth in the previous paragraph. In some
cases, the depositor or the seller may substitute for mortgage loans as
described in the succeeding paragraph. This repurchase or substitution
obligation constitutes the sole remedy available to the certificateholders or
the trustee for a breach of representation or warranty by the depositor or the
seller.

    Within the period specified in the related prospectus supplement,
following the date of issuance of a series of certificates, the depositor, the
servicer, sellers unaffiliated with the depositor or the related subservicer, as
the case may be, may deliver to the trustee substitute mortgage loans in
substitution for any one or more of the mortgage loans initially included in the
trust fund but which do not conform in one or more respects to the description
thereof contained in the related prospectus supplement, or as to which a breach
of a representation or warranty is discovered, which breach materially and
adversely affects the interests of the certificateholders. The required
characteristics of any substitute mortgage loan and any additional restrictions
relating to the substitution of mortgage loans will generally be as described in
this prospectus under "The Trust Fund -- Representations by Unaffiliated
Sellers; Repurchases."

    If stated in related prospectus supplement, mortgage loans may be
transferred to the trust fund with documentation of defects or omissions, such
as missing notes or mortgages or missing title insurance policies. If stated in
the related prospectus supplement, none of the seller, the depositor or any
other person will be required to cure those defects or repurchase those mortgage
loans if the defect or omission is not cured.

    The trustee will be authorized, with the consent of the depositor and the
servicer, to appoint a custodian pursuant to a custodial agreement to maintain
possession of documents relating to the mortgage loans as the agent of the
trustee.

    Pursuant to each pooling and servicing agreement, the servicer, either
directly or through subservicers, or a special servicer, if applicable, will
service and administer the mortgage loans assigned to the trustee as more fully set forth
below. The special servicer may also be a party to the
pooling and servicing agreement with respect to a series of certificates, in
which case the related prospectus supplement shall set forth the duties and
responsibilities of the special servicer thereunder.

http://www.sec.gov/Archives/edgar/data/1354935/000089109206000528/e23488-424b5.txt
45 to 47 <PAGE>

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011

Certified Forensic Loan Auditors

**EMPHASIS ADDED BY EXAMINER:**

**Depositor** CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP. is the only authorized party to assign its interest in loans to the trustee on behalf of certificate holders. Even though **Sponsor** DLJ MORTGAGE CAPITAL, INC. states that evidence of registration in the Mortgage Electronic Registration Systems, Inc. ("MERS") is acceptable in lieu of assignments at the closing date into County records, DLJ MORTGAGE CAPITAL, INC. was still subject to applicable state and local laws. The intent of the recording of documents publically is to let all interested parties understand the rights and obligations of real property owners and lenders. The use of a privately-owned alternate system conceals such information; and a lack of internal control may allow unauthorized parties to act as a sponsor, bankruptcy-remote depositor, trustee, or beneficial owner of a security interest simply by having an employee or agent sign that they are an officer of MERS. DLJ MORTGAGE CAPITAL, INC. and other securitizing parties cannot just make up their own rules. Nor is MERS a legislative or other government body.

*(This space intentionally left blank.)*

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

EX-10.1 2 psa-exhibits.htm PSA WITH EXHIBITS

# CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,
*Depositor,*

# DLJ MORTGAGE CAPITAL, INC.,
*Seller,*

# WELLS FARGO BANK, N.A.,
*Master Servicer, Servicer, Back-Up Servicer and Trust Administrator,*

# SELECT PORTFOLIO SERVICING, INC.,
*Servicer and Special Servicer,*

# U.S. BANK NATIONAL ASSOCIATION,
*Trustee*

# POOLING AND SERVICING AGREEMENT

## DATED AS OF FEBRUARY 1, 2006
relating to

## ADJUSTABLE RATE MORTGAGE TRUST 2006-1

## ADJUSTABLE RATE MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-1

http://www.sec.gov/Archives/edgar/data/1354935/000106823807000067/psa-exhibits.htm

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# ARTICLE II
## CONVEYANCE OF MORTGAGE LOANS;
## REPRESENTATIONS AND WARRANTIES

**SECTION 2.01.          Conveyance of Trust Fund.**

(a)     The Depositor does hereby establish the Adjustable Rate Mortgage  Trust 2006-1 (the "Trust") and sells, transfers, assigns, delivers,  sets over and otherwise conveys to the Trustee in trust for the benefit of the  Certificateholders, without  recourse, the Depositor's right,  title and interest in and to (a) the  Initial  Mortgage Loans listed in the Mortgage Loan Schedule,  including all interest and  principal  received or receivable  by the  Depositor on or with respect to the  Initial  Mortgage  Loans after the Initial Cut-off Date and any Assigned  Prepayment  Premiums with respect thereto, but not including payments of principal and interest due and
payable on the Initial  Mortgage Loans on or before the Initial Cut-off Date,  together with the Mortgage Files relating to the Initial Mortgage Loans,  (b) REO Property,  (c) the Collection Account,  the Certificate Account, the Group 6 Interest Rate Cap Account and all amounts  deposited  therein pursuant to the applicable  provisions of this Agreement,  (d) any  insurance  policies with respect to the
Initial  Mortgage  Loans,  (e) the  Depositor's  rights under the  Assignment  and Assumption  Agreement  and (f) all  proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or other liquid property.

(b)     In connection  with the transfer and  assignment  set forth in clause  (a) above,  the Depositor has delivered or caused to be delivered  to a Custodian  for the benefit of the  Certificateholders,  the  documents  and  instruments  with  respect to each Initial Mortgage Loan as assigned:

(i)      (A) the original  Mortgage Note bearing all intervening  endorsements and including any riders to the Mortgage Note,  endorsed "Pay to the order of _____,  without recourse" and signed in the name of the last named endorsee by an authorized officer or (B) with respect to any Lost Mortgage  Note, a lost note affidavit and indemnity  from the Seller  stating that the original  Mortgage
Note was lost or destroyed,  (together  with a copy of such Mortgage Note, if available) and  indemnifying  the Trust Fund against any loss, cost or liability resulting from the failure to deliver the original Mortgage Note;

(ii)     the original of any guarantee executed in connection with the Mortgage Note (if any);

(iii)     for each  Mortgage Loan that is not a MERS Mortgage  Loan,  the original Mortgage,  with evidence of recording  thereon,  or copies  certified by the related recording office or if the original  Mortgage has not yet been returned from the recording  office, a copy certified by or on behalf of the Seller  indicating  that such Mortgage has been  delivered for recording  (the return  directions for the  original Mortgage  should  indicate,  when  recorded,  mail to the Seller) and in the case of each MERS Mortgage  Loan,  the original  Mortgage,  noting the presence of the MIN of the related Mortgage Loan and either language  indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination,  the original  Mortgage and the  assignment  thereof to MERS,  with evidence of  recording  indicated  thereon or a copy of the  Mortgage  certified by the public recording office in which such Mortgage has been recorded;

(iv)     the originals of all assumption,  modification,  consolidation or extension agreements,  (or, if an original of any of these documents has not been returned from the recording office, a copy thereof  certified by or on behalf of the Seller,  the original

Page | 15



**Certified Forensic Loan Auditors**

to be delivered to the Seller forthwith after return from such recording office) with evidence of recording thereon, if any;

(v)      for each Mortgage Loan that is not a MERS Mortgage Loan,  the original Assignment of Mortgage as  appropriate,  in recordable form, for each Mortgage Loan from the last assignee assigned in blank;

(vi)      for each Mortgage  Loan that was not a MERS  Mortgage Loan at its  origination, the  originals of any  intervening  recorded Assignments  of  Mortgage,  showing a complete  chain of  assignment  from  origination  to  the last  assignee,  including warehousing assignments,  with evidence of recording thereon (or, if an original intervening  Assignment of Mortgage has not been returned from the recording  office,  a copy thereof  certified by or on behalf of the Seller,  the original to be delivered  to the  Custodian  forthwith after return from such recording office);

(vii)      the original  mortgage title  insurance  policy,  or copy of title  commitment (or in  appropriate  jurisdictions,  attorney's opinion of title and abstract of title); and

(viii)      with respect to a Cooperative Loan, if any, the originals of the following documents or instruments:

(A)      the Cooperative Shares, together with the Stock Power in blank;

(B)      the executed Security Agreement;

(C)      the executed Proprietary Lease and the Assignment of Proprietary Lease to the originator of the Cooperative Loan;

(D)      the executed Recognition Agreement;

(E)      Copies of the original UCC financing statement, and any continuation statements,  filed by the originator of such Cooperative Loan as secured  party,  each with  evidence of  recording  thereof,  evidencing  the  interest of the  originator under the  Security Agreement and the Assignment of Proprietary Lease;

(F)      Copies of the filed UCC  assignments  or  amendments  of the  security  interest referenced  in clause  (E) above  showing an unbroken  chain of title from the originator to the Trust,  each with evidence of recording  thereof,  evidencing  the interest of the assignee under the Security Agreement and the Assignment of Proprietary Lease;

(G)      An executed  assignment of the interest of the originator in the Security Agreement,  the Assignment of Proprietary Lease and the Recognition Agreement, showing an unbroken chain of title from the originator to the Trust; and

(H)      For any  Cooperative  Loan  that has been  modified  or  amended,  the  original instrument  or  instruments  effecting  such modification or amendment.

In addition,  in connection  with the assignment of any MERS Mortgage Loan, the Seller agrees that it will cause,  at the  Seller's  expense,  the MERS(R) System to  indicate  that such  Mortgage  Loans have been  assigned by the Seller to the Trustee in accordance  with this Agreement  (and any Subsequent  Transfer  Agreement) for the benefit of the  Certificateholders  by including (or deleting,  in the case of Mortgage  Loans which are  repurchased  or  substituted  in accordance  with this  Agreement)  the  information required by the MERS(R) System to (a) identify  the Trustee and  (b) identify  the series of the  Certificates  issued in connection  with such Mortgage Loans. The Trustee shall confirm,  or cause the Custodian

Page | 16

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

to confirm, on the Final Certification of the Custodian that such assignment has occurred. The Seller further agrees that it will not, and will not permit a Servicer to, and each related Servicer agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased or substituted in accordance with the terms of this Agreement.

In the event the Depositor delivers to the Custodian certified copies of any document or instrument set forth in 2.01(b) because of a delay caused by the public recording office in returning any recorded document, the Depositor shall deliver or cause to be delivered to the Custodian, within 60 days of the Closing Date or the related Subsequent Transfer Date, as applicable, an
Officer's Certificate which shall (i) identify the recorded document, (ii) state that the recorded document has not been delivered to the Custodian due solely to a delay caused by the public recording office, and (iii) state the amount of time generally required by the applicable recording office to record and return a document submitted for recordation.

In the event that in connection with any Mortgage Loan the Depositor cannot deliver (a) for a Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage, (b) all interim recorded assignments or (c) the lender's title policy (together with all riders thereto) satisfying the requirements set forth above, concurrently with the execution and delivery hereof because such document or documents have not been returned from the applicable public recording office in the case of clause (a) or (b) above, or because the title policy has not been delivered to the Seller or the Depositor by the applicable title insurer in the case of clause (c) above, the Depositor shall promptly deliver to the Custodian, in the case of clause (a) or (b) above, such original Mortgage or such interim assignment, as the case may be, with evidence of recording indicated thereon upon receipt thereof from the public recording office, or a copy thereof, certified, if appropriate, by the relevant recording office and, in the case of
clause (c) above, any title policy upon receipt from the applicable title insurer.

As promptly as practicable subsequent to such transfer and assignment, and in any event, within thirty (30) days thereafter, DLJMC shall, at its expense, (i) affix or cause to be affixed the Trustee's name to each Assignment of Mortgage, as the assignee thereof, (ii) cause such assignment to be in proper form for recording in the appropriate public office for real property
records within thirty (30) days after receipt thereof and (iii) cause to be delivered for recording in the appropriate public office for real property records the assignments of the Mortgages to the Trustee, except that, with respect to any assignment of a Mortgage as to which DLJMC has not received the information required to prepare such assignment in recordable form, DLJMC's obligation to do so and to deliver the same for such recording shall be as soon as practicable after receipt of such information and in any event within thirty (30) days after the receipt thereof, and DLJMC need not cause to be recorded any assignment which relates to a Mortgage Loan in any jurisdiction under the laws of which, as evidenced by an Opinion of Counsel delivered by the Depositor (at the Depositor's expense) to the Trustee, the Trust Administrator and DLJMC, acceptable to the Rating Agencies, the recordation of such assignment is not necessary to protect the Trustee's and the Certificateholders' interest in the related Mortgage Loan.

If any original Mortgage Note referred to in Section 2.01(b)(i) above cannot be located, the obligations of the Depositor to deliver such documents shall be deemed to be satisfied upon delivery to the Custodian of a photocopy of such Mortgage Note, if available, with a lost note affidavit and indemnity. If any of the original Mortgage Notes for which a lost note affidavit
and indemnity was delivered to the Custodian is subsequently located, such original Mortgage Note shall be delivered to the Custodian

Page | 17

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

within three (3) Business Days.

(c)    The Trustee and the Trust Administrator are authorized to enter into one or more Custodial Agreements, at the direction of the Depositor, for the purpose of having a Custodian maintain custody of the documents and instruments referred to in this Section 2.01, and any documents delivered thereunder shall be delivered to the Custodian and any Officer's Certificates delivered with respect thereto shall be delivered to the Trustee, the Trust Administrator and the Custodian.

(d)    It is the express intent of the parties to this Agreement that the conveyance of the Mortgage Loans by the Depositor to the Trustee as provided in this Section 2.01 be, and be construed as, a sale of the Mortgage Loans by the Depositor to the Trustee. It is, further, not the intention of the parties to this Agreement that such conveyance be deemed a pledge of the Mortgage Loans by the Depositor to the Trustee to secure a debt or other obligation of the Depositor. However, in the event that, notwithstanding the intent of the parties to this Agreement, the Mortgage Loans are held to be the property of the Depositor, or if any for any other reason this Agreement is held or deemed to create a security interest in the Mortgage Loans then (a) this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the New York Uniform Commercial Code; (b) the conveyance provided for in this Section 2.01 shall be deemed to be a grant by the Depositor to the Trustee for the benefit of the Certificateholders of a security interest in all of the Depositor's right, title and interest in and to (1) the Mortgage Loans listed in the Mortgage Loan Schedule, including all interest and principal received or receivable by the Depositor on or with respect to the Mortgage Loans after the related Cut-off Date and any Assigned Prepayment Premiums with respect thereto, but not including payments of principal and interest due and payable on the Mortgage Loans on or before the related Cut-off Date, together with the Mortgage Files relating to the Mortgage Loans, (2) REO Property, (3) the Collection Account, the Certificate Account, the Group 6 Interest Rate Cap Account and all amounts deposited therein pursuant to the applicable provisions of this Agreement, (4) any insurance policies with respect to the Mortgage Loans, (5) the Depositor's rights under the Assignment and Assumption Agreement and (6) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or other liquid property; (c) the possession by the Trustee or any Custodian of such items of property and such other items of property as constitute instruments, money, negotiable documents or chattel paper shall be deemed to be "in possession by the secured party" for purposes of perfecting the security interest pursuant to Section 9-313 of the New York Uniform Commercial Code; and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, financial intermediaries, bailees or agents (as applicable) of the Trustee for the benefit of the Certificateholders for the purpose of perfecting such security interest under applicable law (except that nothing in this clause (d) shall cause any person to be deemed to be an agent of the Trustee for any purpose other than for perfection of such security interests unless, and then only to the extent, expressly appointed and authorized by the Trustee in writing). The Depositor and the Trustee, upon directions from the Depositor, shall, to the extent consistent with this Agreement, take such actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement.

(e)    The Depositor hereby authorizes and directs the Trustee to (i) execute the Group 6 Interest Rate Cap Agreement and (ii) to ratify, on behalf of the Trust, the terms agreed to by the Depositor with respect to the Group 6 Interest Rate Cap Agreement. The Depositor shall pay or cause to be paid on behalf of the Trust the payments owed to the Group 6 Interest Rate Cap Counterparty as of the Closing Date

Page | 18

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

pursuant to the terms of the Group 6 Interest Rate Cap Agreement.

(f)        [Reserved].

(g)        [Reserved].

(h)        Except as specifically  set forth in this Agreement or by separate  written agreement  among the related parties hereto,  the Depositor,  the Seller,  each  Servicer and the Master  Servicer  agree that the  provisions  of this  Agreement  shall supercede  any provisions in any existing  mortgage loan purchase  agreement or servicing agreement  with respect to the Mortgage Loans for which the Depositor, the Seller, a Servicer or the Master Servicer may be a party.

http://www.sec.gov/Archives/edgar/data/1354935/000106823807000067/psa-exhibits.htm

## Governing Law:

Section 11.04. Governing Law.

This agreement  and the  Certificates  shall be governed by and construed in accordance with the laws of the State of New York and the  obligations,  rights and remedies of the parties hereunder shall be determined in accordance with such laws.

## New York State Trust Law Statutes state:

Unless an asset is transferred into a lifetime trust, the asset does not become trust property.  (NY Estates, Powers and Trust Law § 7-1.18).

A trustee's act that is contrary to the trust agreement is void. (NY Estates, Powers and Trust Law § 7-2.4)

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# SECTION 3:    FORECLOSURE

### Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Deed of Trust Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Deed of Trust** | **Date** | **Note Holder** |
| September 27, 2005<br><br>Instrument # 20050795625<br><br>Official Records,<br>Riverside County California | ELLIOT R. RODRIGUEZ<br>(Borrowers)<br><br>PROVIDENT SAVINGS BANK, F.S.B.<br>(Lender)<br><br>MIN # **100045700888065182** | September 16, 2005 | PROVIDENT SAVINGS BANK, F.S.B.<br><br>( Lender)<br>Principal Amount:<br>$245,000.00<br><br>LOAN # 222-88806518 |
| June 1, 2009<br><br>Instrument # 2009275934<br><br>Official Records,<br>Riverside County California | **Assignment of Deed of Trust<br>#1<br>to U.S. BANK, N.A. as Trustee for Credit Suisse First Boston CSFB ARMT 2006-1.**<br>Signed by Attorney David Seybold as assistant secretary of MERS without disclosure of true role or representation of both Assignor and Assignee | **CUT – OFF DATE**<br><br>February 1, 2006 | **ADJUSTABLE RATE MORTGAGE TRUST 2006-1**<br><br>Lender<br>Principal Amount:<br>$245,000.00 |
| 04/20/2009 & 04/10/2014<br><br>Instrument # 2009192496 & 2014131645<br>[1]<br>Official Records,<br>Riverside County California | **Notice of Default** | | |
| July 23, 2009<br>Instrument #<br>2009381628<br>Official Records,<br>Riverside County California | **Notice of Trustee's Sale** | | |
| February 25, 2014<br><br>Instrument # 201470548<br><br>Official Records,<br>Riverside County California | **Assignment of Deed of Trust<br>#2**<br>to U.S. Bank as Trustee Adjustable Rate Mortgage Trust 2006-1<br>Signed by April Emily Jones as President Loan Documentation of US Bank by Wells Fargo as their attorney-in-fact | | |

*Note: The above analysis covers primary active loan.  Annotated voluntary lien search located in Exhibit I.*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

# REPORT SUMMARY

**Deed of Trust:**

- On September 16, 2005, Debtors ELLIOT R. RODRIGUEZ executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $ 245,000.00. This document was filed as document number 20050795625 in the Official Records of Riverside County. *The original lender of the promissory note and beneficiary of the Mortgage is PROVIDENT SAVINGS BANK, F.S.B.*

- *Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.*

**Securitization (The Note):**

- The NOTE was sold, transferred, assigned and securitized into the **ADJUSTABLE RATE MORTGAGE TRUST 2006-1** with a Closing Date of February 28, 2006.

**Assignment of Deed of Trust # 1:**

- On June 1, 2009, an Assignment of Deed of Trust was recorded in the Official Records, Riverside County as instrument number 2009275934 to U.S. BANK, N.A. as Trustee for Credit Suisse First Boston CSFB ARMT 2006-1. Document was signed by David Seybold for Mortgage Electronic Registration Systems, Inc. without disclosure of Barrett Daffin Frappier Law Group likely employment in working for Assignee, not Assignor. Approximately 3 years had gone by since note placed into ADJUSTABLE RATE MORTGAGE TRUST 2006-1 and examiner therefore recommends immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds prior to the cut-off date of February 1, 2006, starting with original lender PROVIDENT SAVINGS BANK, F.S.B., to DLJ MORTGAGE CAPITAL, INC. to CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP. into the ADJUSTABLE RATE MORTGAGE TRUST 2006-1 for approval of this Assignment of Deed of Trust. <u>Examiner considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by above parties is verified.</u>

- **Depositor CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.is the only rightful party that can place assets into the trust.**

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

## Notice of Default:

- On 04/20/2009 & 04/10/2014, two Notices of Default was recorded in the Official Records, Riverside County as instrument numbers 2009192496 & 2014131645.

## Notice of Trustee's Sale:

- On July 23, 2009, a Notice of Default was recorded in the Official Records, Riverside County as instrument numbers 2009381628.

## Assignment of Deed of Trust # 2:

- On February 25, 2014, a Notice of Default was recorded in the Official Records, Riverside County as instrument number 201470548.  Similar concerns are present as with above Assignment of Deed of Trust.  Document signed by Wells Fargo employee April Emily Jones for U.S. BANK, N.A. as its "Attorney in Fact" without a power of attorney.  Examiner recommends immediate rescission for rightful foreclosure to proceed, pending production and review of purchase and endorsement documents showing complete chain of title.

- **Depositor CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.is the only rightful party that can place assets into the trust.**

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

## ASSIGNMENT OF MORTGAGE # 1      (06/01/2009 - part 1 of 2)

**David Seybold** signs for Mortgage Electronic Registration Systems, Inc., without disclosure of employment by attorneys Barrett Daffin Frappier Law Group or representation of both Assignor and Assignee. This is an indication that he attempted to assign the Deed of Trust to client U.S. Bank as Trustee without an Assignor. This position of unilateral transfer is further strengthened by the fact that here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to the Riverside County, California "for value received".

NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

ASSG20090134004342

Trustee Sale No. : 20090134004342      Title Order No.: 090253540

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON CSFB ARMT 2006-1 all beneficial interest under that certain Deed of Trust dated 09/16/2005, executed by ELLIOTT R. RODRIGUEZ, as Trust or to PROVIDENT FINANCIAL CORP., Trustee, and Recorded on 09/27/2005 as Instrument No. 2005-0795625 of Official Records in the County Recorder's office of RIVERSIDE County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated          MAY 21 2009

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INC AS NOMINEE FOR
PROVIDENT SAVINGS BANK, FSB

David Seybold, Assistant Secretary

State of    Texas)
County of   Dallas)

Before me, _____, the undersigned Notary Public, on this day personally appeared David Seybold, who is the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR PROVIDENT SAVINGS BANK, FSB, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of   MAY 21 2009    , 2009.

My Commission Expires:

SONIA CARDONA

Notary Public Signature

Printed Name of Notary Public

## ASSIGNMENT OF MORTGAGE # 1      (06/01/2009 - part 2 of 2)

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

**David Seybold** of Addison, TX, Is noted as an employee of the Barrett Daffin Frappier Law Group:



https://www.linkedin.com/profile/view?id=293605239&authType=NAME_SEARCH&authToken=2Mmj&l
ocale=en_US&srchid=2596280901400572230762&srchindex=9&srchtotal=10&trk=vsrp_people_res_name
&trkInfo=VSRPsearchId%3A2596280901400572230762%2CVSRPtargetId%3A293605239%2CVSRPcmpt
%3Aprimary



http://www.brokerstitle.net/barrett-daffin-frappier-turner-and-engel-announces-key-appointments/

David Seybold is the General Counsel of Barrett Daffin (BDFTE) specializing in foreclosures

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# martindale.com®

People | Law Firms & Organizations
Find people by name, practice area, geog
Advanced search

**Get Connected** ▾   **Communities** ▾   **Search Tools** ▾   **Professional Development** ▾

Home   Barrett Daffin Frappier Turner & Engel, LLP   People   **Lawyer Profile**



## David Seybold 🔗

General Counsel
Barrett Daffin Frappier
Turner & Engel, LLP
Addison, TX U.S.A.

Phone

**Click Here t**

▾ **Experience & Credentials**   » Ratings & Reviews

**Practice Areas**

- Foreclosures

| | |
|---|---|
| **University** | Case Western Reserve University, B.S. in Accounting, 1978 |
| **Law School** | Southern Methodist University, J.D., 1981 |
| **Admitted** | 1981, Texas; 1982, Ohio |
| **Memberships** | Dallas, Cleveland, Ohio and American Bar Associations; State Bar of Texas. |
| **Biography** | Phi Delta Phi. |
| **ISLN** | 913162925 |

http://www.martindale.com/David-Seybold/1618754-lawyer.htm

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

### CAUSE NO. 10-1093-C368

| | | |
|---|---|---|
| ALVIE CAMPBELL AND JULIE CAMPBELL | § | IN THE DISTRICT COURT |
|    Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | 368th JUDICIAL DISTRICT |
| | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC., AS | § | |
| NOMINEE FOR LENDER AND LENDER'S | § | |
| SUCCESSORS AND ASSIGNS, AND WELLS | § | |
| FARGO BANK, N.A., AND STEPHEN C. | § | |
| PORTER, AND DAVID SEYBOLD, AND | § | |
| RYAN BOURGEOIS, AND MATTHEW | § | |
| CUNNINGHAM, AND JOHN DOE 1-100 | § | |
|    Defendants. | § | WILLIAMSON COUNTY, TEXAS |

### AFFIDAVIT OF STEPHEN C. PORTER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned Notary Public on this day personally appeared Stephen C. Porter, being duly sworn stated under oath, as follows:

"My name is Stephen C. Porter. I am over the age of eighteen years and competent to make this affidavit. I am an attorney licensed to practice law in the State of Texas, and I am Chief Litigation Counsel with the law firm of Barrett Daffin Frappier Turner & Engel, LLP ('BDFTE'). With respect to my work for BDFTE, I am familiar with the firm's client list, as well as the scope of work performed for the firm's clients. I am also personally familiar with BDFTE's past legal representation of Wells Fargo Bank, N.A. ('Wells Fargo') with respect to the foreclosure proceedings forming the basis of the above-styled suit.

BDFTE, its attorneys, including myself and Defendants David Seybold, Ryan Bourgeois, and its representative Matthew Cunningham, were retained by Wells Fargo as foreclosure counsel to commence foreclosure proceedings to enforce the mortgagee's lien against the Property secured by the Note; and to provide Wells Fargo with legal representation in protecting its interests against those of Alvie Campbell and Julie Campbell. To the extent BDFTE or any of its attorneys or representatives mentioned herein had any contact or communication with Alvie Campbell and Julie Campbell, that contact or communication was conducted by BDFTE solely in our capacity as counsel for Wells Fargo. At no time has BDTFE or its attorneys or representatives had contact or communication with Alvie

in Dallas County where David Seybold and firm BDFTE represent Wells Fargo

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

http://api.ning.com/files/7ABrGh2UaUvsCthg3uh9PkpevdtwJPxMyndHwvn50AT4J5ircSxahBHEv
ShwD604KXTOOlu2JEAMP-vs2Pk8Bn*f*3R2Pzlz/AffidavitofStephenCPorter.pdf

**Sample information on the thousands of documents David Seybold colleague Attorney
Stephen Porter signed can be found at:**

http://www.dailyfinance.com/2010/10/30/the-foreclosure-mess-its-even-worse-in-nonjudicial-
states/

**Signing at a Faster and Faster Clip**

An Addison, Texas, foreclosure attorney appears to be a major robo-signer in Dallas
County, executing assignments of deeds of trust and substitutions of trustees for myriad
entities he doesn't work for. According to the Dallas County Records, "Stephen Porter"
from the firm Barrett, Daffin, Frappier, Turner and Engle has signed several thousand
such assignments in that county alone. A New York judge has held that under New York
law, assigning the right to foreclose to your clients -- -something you can presumably do
only if the other entity is also your client -- -is a conflict of interest unless both clients
sign off. I called the firm for comment twice, but as of publication have not heard back.

Porter first appears in the records in 1977, but that doesn't explain why he has signed
nearly 8,400 documents in the land records, most of which are assignments and
substitutions. Indeed, by January 2006, he had appeared in the records only about 200
times. Starting in 2006, however, his signing practices really took off: over 500
documents in that year alone. This year he's signed over 3,100 documents through Oct.
27. While that's not robo-signing on the scale of those who signed hundreds of
documents a day, these are filings in only one county, and it's not even a county in one
of the hardest-hit states like California, Florida and Arizona.

**A New York judge has ruled that an attorney signing an Assignment (transfer of lien) is only
permissible under New York law if attorney gets written approval from both Assignor and
Assignee.**

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

## ASSIGNMENT OF MORTGAGE # 2        (02/25/2014 - part 1 of 2)

Similar concerns surround document below signed by **April Emily Jones**, a Wells Fargo employee who signs that she represents the Assignor as its "Attorney in Fact" without a power of attorney or legal representation agreement. No financial support, proof of funds or note endorsement was filed with this assignment made 6 years after note placed into the ADJUSTABLE RATE MORTGAGE TRUST 2006-1.

Recording Requested By:
WELLS FARGO BANK, N.A.

Assessor, County Clerk & Recorder

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: X9998-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9049

**This document was electronically submitte
to the County of Riverside for recording**
Receipted by: MABRERA

CORPORATE ASSIGNMENT OF DEED OF TRUST

Riverside, California
"RODRIGUEZ"

PREPARED BY: WELLS FARGO BANK, N.A.

For Value Received, U.S. Bank National Association, as Trustee for Credit Suisse First Boston CSFB ARMT 2006-1 by Wells Fargo Bank, N.A. as their Attorney-in-fact hereby grants, assigns and transfers to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR ADJUSTABLE RATE MORTGAGE TRUST 2006-1, ADJUSTABLE RATE MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-1 at 60 LIVINGSTON AVE, ST. PAUL, MN 55107 all its interest under that certain Deed of Trust dated 09/16/2005 , in the amount of $245,000.00, executed by ELLIOTT R. RODRIGUEZ, A MARRIED MAN; AS HIS SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PROVIDENT SAVINGS BANK, FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS and Recorded: 09/27/2005 as Instrument No.: 2005-0799625 in the County of Riverside, State of California.

In witness whereof this instrument is executed.

U.S. Bank National Association, as Trustee for Credit Suisse First Boston CSFB ARMT 2006-1 by Wells Fargo Bank, N.A. as their Attorney-in-fact
On  2-20-2014

_April Emily Jones_, Vice
President Loan Documentation

Page | 28

**COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011**



**Certified Forensic Loan Auditors**

## ASSIGNMENT OF MORTGAGE # 2    (02/25/14 - part 2 of 2)

U.S. Bank National Association, as Trustee for Credit Suisse First Boston CSFB ARMT 2006-1 by Wells Fargo
Bank, N.A. as their Attorney-in-fact
On _2-20-2014_

_April Emily Jones_    Vice
President Loan Documentation

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On _2-20-2014_ before me, _TaSasha D F Jemison_, Notary Public, personally appeared
_April Emily Jones_, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_TaSasha D F Jemison_
Notary Expires: [ 8/00/? ]

TASASHA D. F. JEMISON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2017

(This area for notarial seal)

---

The question becomes why does the Assignee or their agent normally sign an Assignment of Mortgage when it is clear that this is the role of the Assignor? If the Assignor is truly receiving funds for equivalent value of the note based on current market conditions, then they should be willing to sign transfers of lien and endorse notes to the new holder in due course. Because this does not happen in this case and most others, almost every Assignment of Mortgage is suspect in Examiner's experience. The underlined primary case is that the signer signs for a concealment entity or other entity they do not work for without disclosure of true employment; or they sign that they are "attorney in fact" for the Assignor. This particular case has both such examples, the first of which is signed by an attorney. Mere statements that are unsupported are just that. Statements without evidence that should instead be weighed in the balances to determine the facts.

---

**American Banker** states that foreclosure ownership support documents (e.g. Assignments of

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

**Deed of Trust) should be prepared at time of transfer instead of by bank employees claiming
to represent lenders that no longer exist:**



by Kate Berry
AUG 31, 2011 5:47pm ET

Print    Email    Reprints

(15) Comments

Tweet  66    Share  21    Like  76    +1

Some of the largest mortgage servicers are still
fabricating documents that should have been signed
years ago and submitting them as evidence to foreclose
on homeowners.

The practice continues nearly a year after the
companies were caught cutting corners in the robo-
signing scandal and about six months after the industry
began negotiating a settlement with state attorneys
general investigating loan-servicing abuses.

Several dozen documents reviewed by *American
Banker* show that as recently as August some of the
largest U.S. banks, including Bank of America Corp.,
Wells Fargo & Co., Ally Financial Inc., and OneWest
Financial Inc., were essentially backdating paperwork
necessary to support their right to foreclose.

Some of documents reviewed by *American Banker*
included signatures by current bank employees claiming
to represent lenders that no longer exist.

**RELATED LINKS**

U.S. Bank Stands Out as a Mortgage Bond
Trustee with Teeth

Robo-Signing Settlement Needs to Go All the
Way

Are the State AG Mortgage Settlement Talks
Falling Apart?

N.Y. AG Moves to Intervene in B of A-
Bondholder Settlement

**RELATED GRAPHIC**

Enlarge This Image



http://www.americanbanker.com/issues/176_170/robo-signing-foreclosure-mortgage-assignments-1041741-
1.html

Page | 30

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# BLOOMBERG SEARCH SECTION

## LOAN SEARCH

The loan was found in the ADJUSTABLE RATE MORTGAGE TRUST 2006-1 as investor loan number 0405511540, which agrees with the characteristics of the loan.  The loan is shown with a current rate of 2.0% and a principal and interest payment of $864.13 per month.



## DESCRIPTION OF SECURITY FROM BLOOMBERG



## DEAL DESCRIPTION

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**



## SECURITY DESCRIPTION

**Key credit trigger test failed and credit reserves appear to have been depleted in this investment class within trust**



## STRUCTURED FINANCE NOTES SCREEN

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

Lists the primary transaction parties.



**Trust downgraded to speculative and default status since AAA-rated issuance 2/28/2006**

**LOAN LEVEL DETAIL**

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

This is a fixed rate loan. Loan to value ratio was 63%. Property located in Riverside zip code 92503.



While a loan modification was made in this case, no principal forgiveness was granted, unlike some in the trust.



## VIEW ALL LOAN CLASSES SCREEN

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

The loan was found in <u>5 classes</u> as the loan is located in the <u>all collateral group "0"</u> and group "3". <u>Two (2) classes</u> are UNPAID **and the remaining** <u>three (3) classes</u> are completely paid. **CUSIP numbers of each investment class are shown below.**



**LOAN COLLATERAL PERFORMANCE**

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

No loan modifications in spite of a 26-31% 90 day+ default rate in this trust targeting California homeowners



**PROSPECTUS PULLED FROM BLOOMBERG, LP**

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

Prospectus Supplement (To Prospectus Dated December 22, 2005)

# DLJ MORTGAGE CAPITAL, INC.
### Sponsor and Seller

# CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.
### Depositor

# ADJUSTABLE RATE MORTGAGE TRUST 2006-1
### Issuing Entity

## ADJUSTABLE RATE MORTGAGE-BACKED PASS THROUGH CERTIFICATES,
## SERIES 2006-1
## $1,333,476,100
## (Approximate)

**You should consider carefully the risk factors beginning on page S-18 in this prospectus supplement.**

This prospectus supplement may be used to offer and sell the certificates offered hereby only if accompanied by the prospectus.

**Offered Certificates:**

- Twenty-seven classes of the Series 2006-1 Certificates are being offered hereby. You can find a list of the offered certificates, together with their designations, initial class principal balances, initial pass-through rates and certain other characteristics in the table beginning on page S-8 of this prospectus supplement and the footnotes that follow. Principal and interest, as applicable, on the offered certificates will be paid monthly. The first expected distribution date will be March 27, 2006.
- The offered certificates will represent ownership interests only in the Adjustable Rate Mortgage Trust 2006-1 and will not represent ownership interests in or obligations of the sponsor, the seller, the servicers, the master servicer, the special servicer, the back-up servicer, the depositor, the trust administrator, the trustee, the underwriter or any of their affiliates.

**Adjustable Rate Mortgage Trust 2006-1:**

- will consist primarily of six groups of one- to four-family residential adjustable-rate first lien mortgage loans. The mortgage loans generally provide for a fixed interest rate during an initial period of two years, three years, four years, five years, seven years or ten years from the date of origination of the related mortgage loan and thereafter provide for adjustments to the interest rate generally every six months or twelve months, generally based on the six-month LIBOR, one-year LIBOR or one-year CMT indices, as specified in the related mortgage note; and
- will make multiple REMIC elections for federal income tax purposes.

**Credit Enhancement**

- The Class C-B Certificates are subordinated to and provide credit enhancement for the Group 1, Group 2, Group 3, Group 4 and Group 5 Certificates. Each class of Class C-B Certificates is subordinate to and provides credit enhancement for each class of Class C-B Certificates with a lower alphanumerical designation, to the extent described in this prospectus supplement. Certain classes of Group 6 Certificates are subordinated to and provide credit enhancement for other classes of Group 6 Certificates, in each case to the extent described in this prospectus supplement.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved the offered certificates or determined that this prospectus supplement or the prospectus to which it relates is truthful or complete. Any representation to the contrary is a criminal offense.**

Credit Suisse Securities (USA) LLC, as underwriter, will buy the offered certificates from Credit Suisse First Boston Mortgage Securities Corp., the depositor, at a price equal to approximately 100.12124% of their face value, plus accrued interest, if applicable, from the cut-off date. The depositor will pay the expenses related to the issuance of the certificates from these proceeds. The underwriter will sell the offered certificates purchased by it from time to time in negotiated transactions at varying prices determined at the time of sale.

Delivery of the offered certificates, other than the Class AR and Class AR-L Certificates, will be made in book-entry form through the facilities of The Depository Trust Company, Clearstream, Luxembourg and the Euroclear System on or about February 28, 2006.

## Credit Suisse
February 27, 2006

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# CORPORATE TRUSTEE CONTACT INFORMATION AND EXTRACT OF RECENT INVESTOR STATEMENT

Credit Suisse First Boston Mortgage Securities Corp
Adjustable Rate Mortgage-Backed P T Cert
Distribution Date: 25-Apr-2014

**Credit Suisse First Boston Mortgage Securities Corp.
Adjustable Rate Mortgage-Backed P T Cert
Series 2006-1**

Contact: Customer Service - CTSLink
Wells Fargo Bank N.A
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone 1-866-846-4526
Fax: 240-586-8675

**Certificateholder Distribution Summary**

| Class | CUSIP | Record Date | Certificate Pass-Through Rate | Beginning Certificate Balance | Interest Distribution | Principal Distribution | Current Realized Loss | Ending Certificate Balance | Total Distribution | Cumulative Realized Losses |
|---|---|---|---|---|---|---|---|---|---|---|
| 1-A-1 | 22547QAT3 | 03 31 2014 | 3.06171 % | 10,183,793.69 | 36,749.82 | 16,225.25 | 87,602.10 | 10,079,968.64 | 52,973.07 | 4,318,787.19 |
| 1-A-2 | 22547QAB6 | 03 31 2014 | 3.06171 % | 19,003,440.58 | 68,903.36 | 30,416.69 | 162,711.31 | 18,900,321.57 | 99,320.05 | 6,338,069.53 |
| 1-A-3 | 22547QET4 | 03 31 2014 | 3.06171 % | 2,548.44 | 3.85 | 2.52 | 1,545.82 | 0.00 | 6.47 | 2,699,231.72 |
| AR | 22547QD26 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AR-L | 22547QD34 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2-A-1 | 22547QA04 | 03 31 2014 | 2.99070 % | 69,339,921.68 | 172,986.40 | 198,704.85 | 160,379.64 | 69,680,557.19 | 371,641.25 | 10,705,682.09 |
| 2-A-2 | 22547QB28 | 03 31 2014 | 7.36854 % | 0.00 | 0.00 | 0.39 | (0.39) | 0.39 | 0.39 | 7,458,654.44 |
| 3-A-1 | 22547QB36 | 03 31 2014 | 2.74692 % | 49,540,645.38 | 225,174.92 | 24,320.70 | 191,656.32 | 49,324,668.27 | 349,495.62 | 1,320,630.29 |
| 3-A-2 | 22547QB44 | 03 31 2014 | 6.96561 % | 0.00 | 0.00 | 2.82 | (2.82) | 0.00 | 2.92 | 12,167,086.83 |
| 3-A-3 | 22547QB32 | 03 31 2014 | 2.74692 % | 11,492,724.45 | 52,237.34 | 5,542.38 | 44,461.17 | 11,442,610.90 | 57,879.72 | 1,671,187.73 |
| 3-A-4 | 22547QB90 | 03 31 2014 | 6.96561 % | 0.00 | 0.00 | 0.35 | (0.35) | 0.00 | 0.35 | 1,457,767.82 |
| 4-A-1 | 22547QB51 | 03 31 2014 | 5.25658 % | 50,196,961.68 | 57,616.82 | 0.00 | 127,234.70 | 50,039,726.98 | 57,616.82 | 11,405,610.00 |
| 4-A-2 | 22547QB69 | 03 31 2014 | 5.51890 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,003,227.83 |
| 5-A-1 | 22547QB77 | 03 31 2014 | 3.37925 % | 50,960,103.82 | 55,224.65 | 0.00 | 105,757.36 | 50,856,346.46 | 55,224.65 | 19,447,301.11 |
| 5-A-2 | 22547QB85 | 03 31 2014 | 7.68621 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,495,670.33 |
| C-B-1 | 22547QC76 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,223,353.88 |
| C-B-2 | 22547QC84 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,933,165.45 |
| C-B-3 | 22547QC92 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,098,879.27 |
| C-B-4 | 22547QD42 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,173,751.04 |
| C-B-5 | 22547QD59 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,660,652.34 |
| C-B-6 | 22547QD67 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,596,391.40 |
| C-B-7 | 22547QF24 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,791,006.10 |
| C-B-8 | 22547QE38 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,927,051.47 |
| C-B-9 | 22547QE66 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,266,304.55 |
| 6-A-1 | 22547QB93 | 03 31 2014 | 0.28425 % | 37,702,223.77 | 8,228.40 | 18,493.45 | 0.00 | 37,683,730.32 | 27,721.85 | 0.00 |
| 6-A-2 | 22547QC27 | 03 31 2014 | 0.44425 % | 2,450,366.06 | 937.38 | 0.00 | 431,395.73 | 2,018,970.33 | 937.38 | 12,855,000.00 |
| 6-M-1 | 22547QC35 | 03 31 2014 | 0.54425 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,430,000.00 |
| 6-M-2 | 22547QC43 | 03 31 2014 | 0.72425 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,750,000.00 |
| 6-M-3 | 22547QC50 | 03 31 2014 | 1.65425 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,396,000.00 |
| 6-M-4 | 22547QC68 | 03 31 2014 | 2.40425 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6-X | 22547QD75 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| P | 22547QD83 | 03 31 2014 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals | | | | 300,901,428.85 | 678,013.14 | 293,807.50 | 1,310,740.58 | 299,376,830.76 | 972,820.64 | 204,763,509.66 |

This report is compiled by Wells Fargo Bank, N.A. from information provided by third parties. Wells Fargo Bank, N.A. has not independently confirmed the accuracy of the information.

All Record Dates are based upon the governing documents and logic set forth as of 2068ng.

# CHAIN OF TITLE

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

- The Mortgage has MIN number 100045700888065182 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search showing Wells Fargo Bank, N.A. dba America's Servicing Company as Servicer and U.S. Bank as Trustee as the stated investor.

- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.

- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or MORTGAGE sale.

- MERS is never the owner of the promissory note for which it seeks foreclosure.

- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".

- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.

- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no financial or other interest in whether or not a mortgage loan is repaid.

**The loan is _registered_ within the MERS database showing Wells Fargo Bank, N.A. dba America's Servicing Company as Servicer and U.S. Bank as Trustee as the stated investor.**

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**



www.mers-servicerid.org

*Process Loans, not Paperwork™*

**1 record matched your search:**

*Need help?*

MIN: **1000457-0088806518-2**        Note Date: **09/16/2005**        MIN Status: **Inactive**

| Servicer: | Wells Fargo Bank, N.A., d/b/a America's Servicing Company |
| | **Minneapolis, MN** |

Phone: **(651) 605-3711**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Select borrower type and enter borrower information to see Investor for MIN 1000457-0088806518-2.

- **Investor for Individual Borrower**

  *Your entries may be either upper or lower case.*

  *Fields marked ★ are required.*

  **Last Name:**  Rodriguez                    ★

  **SSN:**        -       -        ★

  *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.* ★

  Submit

**Investor for Corporation/Non-Person Entity Borrower**

| Servicer: | Wells Fargo Bank, N.A., d/b/a America's Servicing Company |
| | **Minneapolis, MN** |
| | |
| Investor: | **U.S. Bank as Trustee** |

Phone: **(651) 605-3711**

## SECURITIZING A LOAN

\* For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the

Page | 41

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

- Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders

Page | 42

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

received their monthly payments.

\* PROVIDENT SAVINGS BANK, F.S.B. was a "correspondent lender" that originated mortgage loans. These loans, in turn, were sold and transferred into a "federally-approved securitization" trust named the ADJUSTABLE RATE MORTGAGE TRUST 2006-1.

\* The Note and Deed have taken two distinctly different paths. The Note was securitized into the ADJUSTABLE RATE MORTGAGE TRUST 2006-1.

\* The written agreement that created the ADJUSTABLE RATE MORTGAGE TRUST 2006-1 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT FEBRUARY 28, 2006. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

\* In view of the foregoing, the Assignment of Deed of Trust executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.

\* The loan was originally made to PROVIDENT SAVINGS BANK, F.S.B. and was sold and transferred to ADJUSTABLE RATE MORTGAGE TRUST 2006-1. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and Deed of Trust are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the Deed of Trust with it, while assignment of the latter alone is a nullity."

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a Deed of Trust. If the creditor transfers the note but not the Deed of Trust, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the Deed of Trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685).

"Where the Deed of Truste has "transferred" only the Deed of Trust, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000).

By statute, assignment of the Deed of Trust carries with it the assignment of the debt. . . Indeed, in the event that a Deed of Trust loan somehow separates interests of the note and the Deed of Trust, with the Deed of Trust lying with some independent entity, the Deed of Trust may become unenforceable. The practical effect of splitting the Deed of Trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the Deed of Trust is the agent of the holder of the

Page | 43

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

note. Without the agency relationship, the person holding only the trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the Deed of Trust."

## DISCLAIMER

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings. The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

# AFFIDAVIT OF FACTS

**STATE OF CALIFORNIA**            )
                                   ) sv.: **AFFIDAVIT**

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

**COUNTY OF ORANGE**                    )

**RE: ELLIOT R. RODRIGUEZ**

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg terminal.

2. I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately one thousand eight hundred Securitized Analysis Reports in residential real estate mortgage investigation in 40 states and in Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Nevada, New York and Virginia and via the Internet in webinar format.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

5. On May 20, 2014, I researched the Bloomberg online Database at the request of ELLIOT R. RODRIGUEZ whose property address is 4216 Wheeler Street, Riverside, CA 92503.

6. Based on the information I was provided, ELLIOT R. RODRIGUEZ signed a Promissory Note in favor of PROVIDENT SAVINGS BANK, F.S.B. on September 16, 2005.

Page | 45

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

7.  Loan was identified in the ADJUSTABLE RATE MORTGAGE TRUST 2006-1 with the Master Servicer being WELLS FARGO BANK, N.A..; the Sponsor / Seller being DLJ MORTGAGE CAPITAL, INC. and the Depositor being CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.

8.  The basis of the identification of Loan in ADJUSTABLE RATE MORTGAGE TRUST 2006-1 was made from the following factors/information that exactly correspond with ELLIOT R. RODRIGUEZ'S loan documents provided: Loan Number: 222-88806518; Original Amount: $245,000.00; Origination Date: September 16, 2005; Location of Property: CA; Property Type: Single Family Residence; Occupancy: Owner Occupied; Zip Code: 92503; Type Loan: 30 Year Variable Rate Mortgage.

9.  ELLIOT R. RODRIGUEZ'S Note was split-apart or fractionalized, as separate accounting entries and deposited separately into Classes. Each Class is insured up to 30 times the face value of each Note therein, which is permissible under the Federal Reserve System.

10. Pursuant to my extensive research, I have found the Loan in **five (5) Classes** of the ADJUSTABLE RATE MORTGAGE TRUST 2006-1. These classes represent the sections that the ADJUSTABLE RATE MORTGAGE TRUST 2006-1 is divided into. Individuals invest in these Classes based on their desired maturities, yield, credit rating and other factors. The ADJUSTABLE RATE MORTGAGE TRUST 2006-1 pays interest, usually monthly, to investors and principal payments are paid out in the order of the maturity and as specified in trust agreements.

11. Below are the classes the ADJUSTABLE RATE MORTGAGE TRUST 2006-1 has been divided into and their CUSIP number which is a nine (9) character alphanumeric code identifying any North American security for the purpose of facilitating clearing and settlement of trades.

Page | 46

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**



12. There are a total of **thirty-two (32)** classes in the ADJUSTABLE RATE MORTGAGE TRUST 2006-1.

13. The loan is in **five (5) classes**. Three (3) classes out of the five (5) have been paid (Pd.). The loan is in the all collateral group and group 3.

14. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The Deed of Trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Deed of Trust if each contains a different Morgagee/beneficiary; and, if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

15. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

Page | 47

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

16.  In the event that the loan was sold, pooled and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

17.  Further said, once the Note was converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

18.  Once a loan has been securitized, which the aforementioned loan may have been done many times, it forever loses its security component (i.e., the Deed of Trust), and the right to foreclose through the Mortgage is forever lost.

19.  The Promissory Note has been converted into a stock as a permanent fixture. It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

20.  Careful review and examination reveals that this was a securitized loan. The Assignment of Deed of Trust pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales, where A is the original lender, B the sponsor/seller, C the bankruptcy-remote depositor, and D, the issuing mortgage-backed securities trust. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Deed of Trust had to be provided by the Document Custodian certified to have been in possession of them by them on or about February 28, 2006. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement. I supply this report as written testimony and am available for oral testimony.

By:

_____

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

**STATE OF CALIFORNIA**          )
                                 ) sv: ACKNOWLEDGEMENT
**COUNTY OF ORANGE**             )

On _____, 2014 before me, _____
                                              (Notary Public)

personally appeared **MICHAEL CARRIGAN**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)


My commission Expires _____

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



Certified Forensic Loan Auditors

STATE OF CALIFORNIA          )
                             ) ss: ACKNOWLEDGEMENT
COUNTY OF ORANGE             )

On _05/21/_ 201_ before me _Nilza M. Mahood_
                                    (Notary Public)

personally appeared **MICHAEL CARRIGAN**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of whom the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission Expires _____

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

# EXHIBIT "I"

## Voluntary Lien Report

**Transaction Details for**
**4216 WHEELER ST, RIVERSIDE CA 92503**
**APN: 193-062-025**

**History Record #: 1**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **04/10/2014** | Filing Date: **04/09/2014** |
| Document Number: **2014.131645** | Orig Recording Date: **09/27/2005** |
| Document Type: **NOTICE OF DEFAULT** | Orig Doc Number: **795625** |
| Trustee: | Trustee Phone: |
| Title Company: | Unpaid Balance: |
| Defendant: | |

**History Record #: 2**
*Assignment:*

| | |
|---|---|
| Recording Date: **02/25/2014** | Orig Recording Date: **09/27/2005** |
| Document Number: **2014.70548** | Orig Doc Number: **795625** |
| Document Type: **ASSIGNMENT** | |
| New Lender: | |
| Previous Lender: | |
| Borrower: | |

**History Record #: 3**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **01/08/2010** | Filing Date: |
| Document Number: **2010.8115** | Orig Recording Date: **09/27/2005** |
| Document Type: **RESCISSION OF NOTICE OF DEFAULT** | Orig Doc Number: **795625** |
| Trustee: | Trustee Phone: |
| Title Company: | Unpaid Balance: |
| Defendant: | |

**History Record #: 4**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **07/23/2009** | Filing Date: |
| Document Number: **2009.381628** | Orig Recording Date: **09/27/2005** |
| Document Type: **NOTICE OF TRUSTEE SALE** | Orig Doc Number: **795625** |
| Trustee: | Trustee Phone: |
| Title Company: | Unpaid Balance: |
| Defendant: | |

**History Record #: 5**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **06/04/2009** | Filing Date: |
| Document Number: **2009.283232** | Orig Recording Date: **09/27/2005** |
| Document Type: **SUBSTITUTION OF TRUSTEE** | Orig Doc Number: **795625** |
| Trustee: | Trustee Phone: |
| Title Company: | Unpaid Balance: |
| Defendant: | |

**History Record #: 6**
*Assignment:*

| | |
|---|---|
| Recording Date: **06/01/2009** | Orig Recording Date: **09/27/2005** |
| Document Number: **2009.275834** | Orig Doc Number: **795625** |
| Document Type: **ASSIGNMENT** | |
| New Lender: | |
| Previous Lender: | |
| Borrower: | |

**History Record #: 7**
*Foreclosure:*

| | |
|---|---|
| Recording Date: **04/20/2009** | Filing Date: |
| Document Number: **2009.192496** | Orig Recording Date: **09/27/2005** |
| Document Type: **NOTICE OF DEFAULT** | Orig Doc Number: **795625** |
| Trustee: | Trustee Phone: |

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*



**Certified Forensic Loan Auditors**

| | |
|---|---|
| Title Company: | Unpaid Balance: |
| Defendant: | |

**History Record #: 8**

*Sale/Transfer:*

| | | | |
|---|---|---|---|
| Recording Date: | 09/27/2005 | Sale Date: | |
| Document Number: | 2005.795624 | Sale Price: | |
| Document Type: | QUITCLAIM | Sale Type: | |
| Title Company: | FIDELITY NATIONAL TITLE | | |
| Buyer: | RODRIGUEZ,ELLIOTT R | | |
| Seller: | RODRIGUEZ HELEODORO R & ISABEL C | | |

*Finance:*

| | | | |
|---|---|---|---|
| Recording Date: | 09/27/2005 | Finance Type: | REFINANCE |
| Document Number: | 2005.795625 | Mortgage Loan Type: | |
| Document Type: | FINANCE | Mortgage Term: | |
| Lender: | PROVIDENT SAVINGS BANK | Mortgage Rate Type: | VARIABLE |
| Loan Amount: | $245,000 | Mortgage Rate: | |
| Borrower: | RODRIGUEZ ELLIOTT R | | |

**History Record #: 9**

*Sale/Transfer:*

| | | | |
|---|---|---|---|
| Recording Date: | 05/28/1993 | Sale Date: | |
| Document Number: | 1993.203758 | Sale Price: | |
| Document Type: | QUITCLAIM | Sale Type: | |
| Title Company: | CHICAGO TITLE | | |
| Buyer: | RODRIGUEZ,HELEODORO R & ISABEL C | | |
| Seller: | RODRIGUEZ,HELEOD | | |

*Finance:*

| | | | |
|---|---|---|---|
| Recording Date: | 05/28/1993 | Finance Type: | REFINANCE |
| Document Number: | | Mortgage Loan Type: | |
| Document Type: | FINANCE | Mortgage Term: | |
| Lender: | COURTESY FUNDING | Mortgage Rate Type: | FIXED |
| Loan Amount: | $97,000 | Mortgage Rate: | |
| Borrower: | RODRIGUEZ ISABEL C | | |
| Borrower: | RODRIGUEZ HELEODORO R | | |

**History Record #: 10**

*Sale/Transfer:*

| | | | |
|---|---|---|---|
| Recording Date: | 08/01/1988 | Sale Date: | |
| Document Number: | 1988.247338 | Sale Price: | $95,000 |
| Document Type: | | Sale Type: | FULL VALUE |
| Title Company: | FIRST AMERICAN TITLE | | |
| Buyer: | RODRIGUEZ HELEOD | | |
| Seller: | SUMMERS ROGER B | | |

*Finance:*

| | | | |
|---|---|---|---|
| Recording Date: | 08/01/1988 | Finance Type: | RESALE |
| Document Number: | | Mortgage Loan Type: | FEDERAL HOUSING AUTHORITY (FHA) |
| Document Type: | FINANCE | Mortgage Term: | |
| Lender: | GREATER SUBURBAN MTG GROUP | Mortgage Rate Type: | |
| Loan Amount: | $95,755 | Mortgage Rate: | |
| Borrower: | RODRIGUEZ HELEOD | | |

### Voluntary Lien Date Ranges for RIVERSIDE , CA

| | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start Date | 01/01/1988 | 01/01/1988 | 01/01/2005 | 01/01/2005 | 01/01/2005 |
| End Date | 05/08/2014 | 05/08/2014 | 05/08/2014 | 05/07/2014 | 05/08/2014 |

COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011



**Certified Forensic Loan Auditors**

www.docedge.com

1. Item 8.  ELLIOT R. RODRIGUEZ refinanced property for $245,000 on 09/27/2005, with primary active loan.

2. Item 1 and 3-5. **Foreclosure actions related to primary active loan.**

3. Items 2 and 6.  Foreclosure actions brought by foreclosing parties with impropriety as noted in body of report.   Assignments made several years after economic transfer into identified trust without supporting detail either by those posing as a representative of Assignor without disclosure of working in interests of Assignee; or by stating the Assignee was Attorney in Fact for the Assignor.  Examiner recommends immediate rescission of document for rightful foreclosure to proceed; and production and review of all purchase documents and then notarized note endorsements among all relevant parties.

*Remaining items 9 – 10 relate to prior ownership*

*COPYRIGHT 2011 CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2011*